UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL GOLDMAN,

                Plaintiff,

   -against-

The CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, LIEUTENANT
CHRISTOPHER CANTELMI, POLICE OFFICER
SANCHEZ, and POLICE OFFICER "JOHN DOE,"
whose identity is still unknown,

                Defendants.
------------------------------------------------------------X




Civil Action No.

**COMPLAINT**

Jury Trial Demanded

        Plaintiff, Michael Goldman, by his attorneys, Snitow Kanfer Holtzer Millus LLP, and as for his complaint against Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT ("NYPD"), LIEUTENANT CHRISTOPHER CANTELMI, OFFICER JANE DOE SANCHEZ and OFFICER JOHN DOE (collectively, "Defendants"), does hereby state and allege:

### PRELIMINARY STATEMENT

        1.     Defendant, Lieutenant Christopher Cantelmi ("Lieutenant Cantelmi"), with the assistance of his female colleague known only as Officer Sanchez and male colleague John Doe, assaulted and battered Plaintiff Michael Goldman for indisputedly no legitimate, lawful reason. This action was in direct violation of Plaintiff's federal and constitutional rights, guaranteed by the 14th Amendment Due Process Clause of the U.S. Constitution, and in violation of 42 U.S.C. Sections 1983 and 1985.

        2.     Defendant Lieutenant Cantelmi used his position and power as an officer of Defendant NYPD to intimidate, assault and batter Plaintiff, Defendant Officer Jane Doe

facilitated this behavior and Defendant Officer John Doe condoned it. They conducted themselves in this manner as a result of the NYPD's policy and practice which provides practically unimpeded control over the unsuspecting and trusting public and which fails to explicitly prohibit the use of aggressive dominance and violent control tactics that seek to further individual officers' personal unfulfilled needs.

## JURISDICTION AND VENUE

3. Jurisdiction is founded upon the existence of a Federal Question, in accordance with 28 U.S.C. §1331, as well as 28 U.S.C. §1343(3) and (4), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. § 1983.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial portion of the events or omissions giving rise to the claims occurred.

## PARTIES

5. Plaintiff Michael Goldman is a legal resident of the United States and a resident of Great Neck, State of New York.

6. Upon information and belief, at all times hereinafter mentioned, the defendant City of New York was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Upon information and belief, at all times hereinafter mentioned, the defendant City of New York, its agents, servants and employees operated, maintained and

controlled the NYPD, including all the police officers thereof.

8. Upon information and belief, at all times hereinafter mentioned, and on or prior to December 2010, Defendant Lieutenant Cantelmi was employed as a police officer, in the position of lieutenant, by Defendant City of New York.

9. Upon information and belief, at all times hereinafter mentioned, and on or about December 20, 2010, Defendant Officer Jane Doe Sanchez was employed by Defendant City of New York.

10. Upon information and belief, at all times hereinafter mentioned, and on or about December 20, 2010, Defendant Officer John Doe was employed by defendant City of New York.

11. This action arises under the United States Constitution, particularly under provision of the Fourteenth Amendment to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights under the laws of the State of New York.

12. Each and all of the acts of the Defendants alleged herein were committed by the Defendants, their agents, servants and employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, and City of New York.

## FACTS

### Background

13. This action arises from the shameful acts of defendant Lieutenant Cantelmi, a member of the NYPD, and fellow officers, and the conspiracy to cover it up, by

3

other officers of the NYPD.

14. Plaintiff Michael Goldman seeks compensation for the unconstitutional and tortious conduct of Defendant Lieutenant Cantelmi, who attacked Plaintiff, and other officers who witnessed and even facilitated this event, yet failed to report what they knew, thereby creating a "blue wall" of silence and lies to obstruct justice and prevent the truth from surfacing, and police supervisors who failed to control subordinates, with a history of abusive behavior. Plaintiff seeks redress against the City of New York in light of the NYPD's policy and practice that provides practically unimpeded control over innocent members of the public, and which fails to explicitly prohibit the use of aggressive dominance and violent control tactics that seek to satisfy individual officers' personal needs.

### Encounter With Lieutenant Cantelmi

15. On December 20, 2010, at approximately 10:30 p.m., at the northeast corner of Seventh Avenue and 32nd Street, New York, New York, Plaintiff walked past two uniformed police officers, a/k/a Officer Jane Doe Sanchez and Officer John Doe, who were standing outside marked police car #5136.

16. Police car #5136 was sounding its sirens and lights, with a plainclothes officer, Lieutenant Cantelmi, sitting in the front seat along with two young children.

17. As Plaintiff passed, for reasons that were entirely harmless and well intentioned, he videotaped what he observed on his i-Phone.

18. At that point, Lieutenant Cantelmi got out of the car, approached Plaintiff, stepped on Plaintiff's foot, shoved Plaintiff in the chest and said, "Go ahead you pussy, why don't you assault a police officer?"

4

19. Upon information and belief, Lieutenant Cantelmi took these actions in an attempt to create a confrontation for the sole purpose of providing a cause to arrest Plaintiff.

20. Frightened by Lieutenant Cantelmi's out-of-control and violent overtures, Plaintiff stepped back and expressed that he was offering no resistance. Lieutenant Cantelmi again moved toward Plaintiff, shoved Plaintiff in the chest, stepped on his foot and said "Go ahead you pussy – assault a police officer." Plaintiff again stepped back and reiterated that he was offering no resistance.

21. During this time, a female officer, Officer Jane Doe Sanchez, was standing to Plaintiff's immediate left and did not intervene, despite Plaintiff's requests. She then whispered into Lieutenant Cantelmi's ear, at which time he walked away and out of sight. Officer Jane Doe Sanchez immediately went to her partner who was back at the car, said something to him and they quickly left the scene.

22. Plaintiff called 911 to file a report, and, while he was on the phone, Lieutenant Cantelmi returned and attacked Plaintiff from behind and punched him in the back of the right side of his head, just behind and below his ear. He hit Plaintiff several times in the back right side of his head and then ran away.

23. Plaintiff incurred great pain from the blows to his head, resulting in severe and extreme discomfort for the next two weeks, as well as severe and extreme emotional distress, embarrassment, humiliation and trauma.

24. After Plaintiff walked across the street in search of assistance, two uniformed officers assisted him and a sergeant appeared. After Plaintiff gave them the police car number, one of the officers spotted the car, stopped it and spoke to Officer Jane Doe

Sanchez and her partner Officer John Doe.

## The Internal Affairs Bureau Complaint and Investigation

25. Plaintiff, Officer Jane Doe Sanchez and Officer John Doe all went down to the local precinct where Plaintiff gave a recorded statement to Internal Affairs, while Officer Jane Doe Sanchez and Officer John Doe gave a separate statement.

26. Internal Affairs investigated the matter.

27. Upon information and belief, this was not the first instance in which Lieutenant Cantelmi assaulted and battered a member of the public without any legal justification.

28. Upon information and belief, Lieutenant Cantelmi was known among his fellow members of the NYPD to assault and batter innocent members of the public.

29. Upon information and belief, Lieutenant Cantelmi's fellow members of the NYPD not only condoned such behavior but outright encouraged it. They certainly did nothing to stop it.

30. Upon information and belief, Lieutenant Cantelmi's fellow members of the NYPD worked with him in covering up his acts.

31. Upon information and belief, Internal Affairs recommended that disciplinary charges be preferred against Lieutenant Cantelmi for assaulting and battering Plaintiff, but the NYPD has preferred only minor charges against him.

32. Regardless, upon information and belief, to this day Lieutenant Cantelmi remains an active police officer employed by the NYPD and the City of New York.

33. No criminal charges of any type have been brought against Lieutenant

Cantelmi as a result of his actions and his criminal behavior against the Plaintiff.

34. Upon information and belief, Defendant Officer Jane Doe Sanchez participated in, or otherwise failed to intervene in, prior incidents of assault and battery against innocent members of the public, but failed to report them.

35. Upon information and belief, no charges were preferred against Officer Jane Doe Sanchez for facilitating the assault and battery on Plaintiff, and to this day she remains an active police officer employed by the NYPD and the City of New York.

36. Upon information and belief, Defendant Officer John Doe condoned, or was otherwise aware of, prior incidents of assault and battery against innocent members of the public, but failed to report them.

37. Upon information and belief, no charges were preferred against Officer John Doe for condoning and/or failing to report facilitating the assault and battery on Plaintiff, and to this day he remains an active police officer employed by the NYPD and the City of New York.

### Abuse of the Public by the NYPD

38. Defendant Lieutenant Cantelmi and Defendants Officer Jane Doe Sanchez and Officer John Doe, acting individually, and jointly, agreed and conspired to obstruct justice and conceal and cover up their criminal actions in the assault and battery of Plaintiff Michael Goldman, and in their dereliction of their duties as law enforcement officers.

39. Defendants' conspiracy and concealment was deliberate to deny Plaintiff access to the courts.

40. Defendant NYPD has been on notice of a significant and pervasive

problem of police officers' use of their position and power to abuse.

41. Upon information and belief, defendant NYPD has failed to address this problem within its rank and file by ignoring complaints of victims and testimony of victims' representatives and advocates and police conduct experts.

42. Upon information and belief, defendant NYPD's policies and practices exceed the bounds of administrative and law enforcement protocols because in addition to failing to address this misconduct and misuse of official power, it has continued to promote policies and practices which provide for unlimited and unfettered discretion by police officers in their treatment of innocent members of the public.

43. The discretion which is accorded individual police officers knows no bounds. Upon information and belief, it is neither specifically prohibited nor discussed in the police manual.

44. It is the policy and/or custom of the City to inadequately and improperly investigate civilian complaints of police misconduct. Acts of brutality have been tolerated by the City. Internal Affairs' investigations of brutality and assault rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.

## COUNT I

### VIOLATION OF THE PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1983 FOR THE ASSAULT AND BATTERY AGAINST PLAINTIFF BY DEFENDANT LIEUTENANT CANTELMI

45. Plaintiff repeats and realleges allegations contained in paragraphs 1- 44 of this complaint as if fully set forth herein.

46. The assault and battery of Plaintiff was effected by defendant Lieutenant Cantelmi without authority of law and without any reasonable necessity to use any force, much less the excessive force that he employed, and the force employed was used without legal justification, without Plaintiff's consent, with malice and with an intent to inflict pain and suffering.

47. As a police officer employed by defendant City of New York and the NYPD, Lieutenant Cantelmi was acting under the color of the State. The aforementioned misuse of authority and power by Lieutenant Cantelmi was egregious and shocking to the conscience.

48. As a direct result, Plaintiff was caused to incur severe physical pain and undergo the humiliation and indignities resulting from being compelled to engage in the physical contact described, against his will, and was caused, and will continue to undergo and endure, severe mental anguish, humiliation and trauma as a consequence thereof.

49. Such deprivation was in violation of the substantive due process rights secured to Plaintiff by the Fourteenth Amendment of the United States Constitution, warranting redress under 42 U.S.C. § 1983.

50. Accordingly, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to receive from Defendant Lieutenant Cantelmi the damages suffered as a result of the above-described conduct, not as yet precisely determined, as well as attorneys' fees associated with the action, and punitive and exemplary damages.

## COUNT II

### FAILURE TO INTERVENE TO PREVENT THE VIOLATION OF CIVIL RIGHTS AGAINST DEFENDANTS CITY OF NEW YORK, JANE DOE SANCHEZ AND JOHN DOE

51. Plaintiff repeats and realleges allegations contained in paragraphs 1- 50 of this complaint as if fully set forth herein.

52. Defendants Officer Jane Doe Sanchez and Officer John Doe observed or had reason to know that excessive force was being inflicted upon Plaintiff by Lieutenant Cantelmi.

53. Defendants had a realistic opportunity to intervene to prevent or end the unlawful conduct inflicted upon Plaintiff by Lieutenant Cantelmi.

54. Defendants Officer Jane Doe Sanchez and Officer John Doe failed to intervene to prevent or end the unlawful conduct inflicted upon Plaintiff by Lieutenant Cantelmi.

55. Defendants Officer Jane Doe Sanchez and Officer John Doe are liable for the preventable harm caused by the actions of Defendant Lieutenant Cantelmi.

56. As a result of the foregoing, Plaintiff has been damaged in an amount not as yet precisely determined, as well as attorneys' fees associated with the action, and punitive and exemplary damages.

## COUNT III

### DEPRIVATION OF CIVIL RIGHT TO DUE PROCESS AGAINST ALL DEFENDANTS

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1-

56 of this complaint as if fully set forth herein.

58. Acting under color of law, Defendants' malicious and deliberate cover-up and conspiracy deprived Plaintiff of his right to due process in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

59. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial damages, including severe physical pain, humiliation and indignities, severe mental anguish, trauma and emotional distress.

## COUNT IV

## 42 U.S.C. § 1983 - MONELL CLAIM

60. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 59 of this complaint as if fully set forth herein.

61. Prior to December 20, 2010, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Plaintiff's rights.

62. It was the policy and/or custom to train, supervise and discipline officers inadequately, including Defendant Lieutenant Cantelmi, thereby failing to discourage Constitutional violations on the part of its police officers.

63. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

64. This "code of silence" is a custom deeply ingrained in the members of

11

the New York City Police Department so as to constitute the actual policy of the City of New York.

   65. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who aid and abet and/or are aware of and subsequently conceal violations of constitutional rights of citizens by other NYPD police officers, thereby causing and encouraging NYPD police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Plaintiff Michael Goldman.

   66. It is believed that the City of New York has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline or more closely supervise, or decide to retain such officers who engage in the "code of silence," causes NYPD police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene nor give evidence against them. These systemic deficiencies include, but are not limited to:

   A. Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

   B. Preparation of investigative reports which uncritically rely solely on the

    word of police officers and which systematically fail to credit testimony of non-police witnesses;

  C. Preparation of investigative reports which omit or ignore factual information which contradict the accounts of police officers;

  D. Failure to have meaningful reviews of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

  E. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

  67. The Defendant City of New York, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately and callously indifferent to that need.

  68. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like Plaintiff and the need for more or different training and discipline are manifested in the policies, practices and customs of the City of New York and have caused police officers, including the defendant officers in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the

foreseeable result that officers are more likely to violate the constitutional rights of citizens.

69. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered substantial damages, including severe physical pain, humiliation and indignities, severe mental anguish, trauma and emotional distress, for which he is entitled to compensatory damages, as well as attorneys' fees associated with the action.

### **Supplemental State Law Claims**

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 69 of this complaint as if fully set forth herein.

71. Plaintiff has satisfied the jurisdictional requirement of timely filing and serving a Notice of Claim to all necessary defendants pursuant to New York General Municipal Law § 50.

72. On April 18, 2011, Plaintiff served upon, presented to and filed with the City of New York a Notice of Claim setting forth all facts and information required under the General Municipal Law § 50-e.

73. Plaintiff gave testimony at a 50-h hearing at the request of the City of New York on June 14, 2011.

74. On July 18, 2011, upon Plaintiff's petition, the Supreme Court of the State of New York (Peter Moulton, J.), permitted Plaintiff to serve a late Notice of Claim by September 9, 2011.

75. On September 2, 2011, Plaintiff served the City of New York with the late Notice of Claim.

76. At least thirty days have elapsed since the service of such Notice of

14

Claim and the Defendants have failed, neglected or refused to settle these claims.

77. This action has been commenced within one year and ninety days after the cause of action arose.

### COUNT V

### RESPONDEAT SUPERIOR FOR FAILURE TO INTERVENE

78. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 77 of this complaint as if fully set forth herein.

79. Defendants Officers Jane Doe Sanchez and John Doe were on duty during the aforesaid occurrence on December 20, 2010, and acting within the scope of their employment when they had a realistic opportunity to intervene to prevent or end the unlawful conduct inflicted upon Plaintiff by Lieutenant Cantelmi, but failed to do so.

80. Defendant City of New York is vicariously liable for the preventable harm caused by the actions and inactions of Officers Jane Doe Sanchez and John Doe.

81. As a direct and proximate cause thereof, Plaintiff has suffered substantial damages, including severe physical pain, humiliation and indignities, severe mental anguish, trauma and emotional distress, for which he is entitled to compensatory damages.

### COUNT VI

### NEGLIGENT HIRING AND RETENTION

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 81 of this complaint as if fully set forth herein.

83. Defendant City of New York, by and through its agents, servants and/or employees, carelessly, negligently and recklessly hired applicants for the position of Police

15

Officer, including Defendant Lieutenant Cantelmi, who lacked the maturity, sensibility and intelligence to be employed by the City of New York, and particularly as a member of the NYPD.

84. Defendant City of New York, by and through its agents, servants and/or employees, carelessly, negligently and recklessly retained applicants for the position of Police Officer, including Defendant Lieutenant Cantelmi, who lacked the experience, deportment, ability and temperament to be employed by the City of New York, and particularly as a member of the NYPD.

85. The aforesaid occurrence and resulting injuries to Plaintiff's mind and body were caused wholly and solely by reason of the negligence of defendant City of New York, its agents, servants and employees without any negligence on the part of Plaintiff.

86. As a direct and proximate cause of defendants' actions, Plaintiff has suffered substantial damages, including severe physical pain, humiliation and indignities, severe mental anguish, trauma and emotional distress, for which he is entitled to compensatory damages.

## COUNT VII

### BATTERY AGAINST LIEUTENANT CANTELMI

87. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 86 of this complaint as if fully set forth herein.

88. On December 20, 2010, Defendant Lieutenant Cantelmi committed the tort of battery on Plaintiff in that his touching of Plaintiff was harmful, unjustified and without consent, and in so doing violated Plaintiff's right under New York law.

89. By reason of the acts of battery committed against Plaintiff, Plaintiff has suffered substantial damages, including severe physical pain, humiliation and indignities, severe mental anguish, trauma and emotional distress, for which he is entitled to compensatory damages.

## COUNT VIII

### ASSAULT AGAINST LIEUTENANT CANTELMI

90. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 89 of this complaint as if fully set forth herein.

91. On December 20, 2010, defendant Lieutenant Cantelmi committed the tort of assault against Plaintiff by causing him to be in apprehension of imminent, harmful and offensive touching and in so doing violated Plaintiff's rights under New York law.

92. By reason of the acts of assault committed against Plaintiff, Plaintiff has suffered substantial damages, including humiliation and indignities, severe mental anguish, trauma and emotional distress, for which he is entitled to compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment for the following relief against the Defendants, jointly and severally:

(A) full and fair compensatory damages in an amount to be determined by a jury;

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorneys' fees and the costs and disbursements of their action; and

(D) such other and further relief as appears just and proper.

Dated: December 14, 2011
       New York, New York

                                SNITOW KANFER HOLTZER
                                & MILLUS, LLP

By: _____
     Virginia K. Trunkes (VT-8642)
     575 Lexington Avenue, 14th Floor
     New York, New York 10022
     (212) 317-8500
     *Attorneys for Petitioner*
     *Michael Goldman*

M:\CLIENT\9443\Complaint.wpd